# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER DEVOSE,

    Petitioner

v.

WILLIAM HUTCHINGS,[1] *et al.*,

    Respondents

Case No.: 2:21-cv-02069-APG-DJA

**Order Denying Petition, Denying Certificate of Appealability, and Closing Case**

In his *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus, Christopher Devose challenges his murder conviction, arguing that insufficient evidence was presented at trial and that his counsel rendered ineffective assistance. ECF Nos. 8, 11.  The remaining claims lack merit so I deny the petition, deny a certificate of appealability, and close the case.

## I. Background

In 2015, a jury in the Eighth Judicial District Court (Clark County, Nevada) convicted Devose of second-degree murder with use of a deadly weapon. Exhibit 49.[2]  He was found guilty of stabbing his brother Charles Burkett in the neck after an argument about rent payment. Burkett died of his injuries. *See* ECF No. 52 at 2-3.  The state district court sentenced him to 10 years-to-life, with a consecutive term of 5-to-20 years for the deadly weapon enhancement. Exh. 54.  Judgment of conviction was entered on October 7, 2015. Exh. 55.  The Supreme Court of Nevada affirmed Devose's conviction in February 2018 and affirmed the denial of his state

---

[1] According to the state corrections department's inmate locator page, Devose is incarcerated at Southern Desert Correctional Center.  The department's website reflects Ronald Oliver is the warden for that facility.  At the end of this order, I direct the clerk to substitute Ronald Oliver for prior respondent William Hutchings, under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Exhibits referenced in this order are exhibits to the respondents' motion to dismiss, ECF No. 18, and are found at ECF Nos. 19-32, 35.

postconviction petition in September 2021. Exhs. 87, 117. Devose dispatched his federal habeas petition for filing in November 2021. ECF No. 7. His amended petition and addendum now comprise the operative petition. ECF Nos. 8, 11. The following claims remain for my consideration on the merits:

> Ground 1: Trial counsel was ineffective for allowing Bobby Banks to sit through trial despite the exclusionary rule having been invoked, which prevented him from being a defense witness.
>
> Ground 3: Insufficient evidence was presented at trial to support Devose's conviction.
>
> Ground 4: The trial court continued to reappoint trial counsel to represent Devose after a conflict of interest became apparent in violation of his Sixth Amendment right to conflict-free counsel.
>
> Ground 5: Trial counsel was ineffective for:
>
> (a)  failing to investigate;
> (b)  failing to object to the improper jury instructions on self-defense;
> (c)  failing to object to when Devose's custody status was revealed to the jury;
> (d)  conceding Devose's guilt;
> (e)  failing to object to numerous instances of constitutional error; and
> (f)  failing to properly communicate.

ECF Nos. 8, 11.

**II. Trial Testimony**

I summarize the trial evidence and related state court record material and proceedings as a backdrop to consideration of the issues presented in the case.[3]

---

[3] I make no credibility or factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. I summarize them only as background to the issues presented in this case, and I do not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me. Any absence of mention of a specific piece of evidence or category of evidence does not signify that I overlooked it in considering Devose's claims.

Witnesses testified at trial about an altercation between Devose and his brother; his brother ultimately died of a stab wound.  Earlie Thomas testified that he, Devose, and Charles "Avian" or "Avie" Burkett are all half-brothers (the three have different fathers) who were living at a Las Vegas apartment together. Exh. 36 at 145-183; Exh. 38 at 7-113.  Devose was supposed to contribute to the rent but was looking for a job.  Devose sometimes stayed at his girlfriend Gwen Seabrook's apartment in the same complex.  On November 21, 2014, at about 10:00 p.m. the three brothers were discussing the rent situation.  Devose told Burkett that he was going to have to wait a couple of weeks for some money from Devose.  Burkett suggested that Devose ask his girlfriend for money, which angered Devose.  Devose walked up close to Burkett, and Burkett pushed him back a couple of times.  Burkett finally punched Devose in the jaw, knocking him to the ground.  As Devose was trying to get back up, Burkett punched him in the chest.  Devose got up, his jaw was swollen and he was spitting blood.  He left the apartment without saying anything further.  Thomas talked to Burkett, calming him down.

About five minutes later, Devose came back in.  Thomas saw that that he had a steak knife sticking out of his right pocket.  Devose was quiet for a moment, then said, "I'm going to kill you, bro." Exh. 36 at 163.  Burkett started toward Devose, asking him if he was serious.  Thomas tried to separate them but was pushed out of the way.  Burkett charged Devose outside the apartment door.  Burkett ran back into the apartment clutching his neck; there was blood everywhere.  He said to Thomas, "Help me, bro, I got stabbed." *Id*. at 171.  Burkett went back outside.  Devose came into the apartment, pacing around, knocking things over.  He said, "Oh my god, I can't believe it, I can't believe I did this, I can't believe it." *Id*. at 174.  He told Thomas to call 911.  Devose told Thomas not to tell on him and ran off behind the apartments.  Thomas found Burkett outside lying on the ground.  Thomas was on the phone with 911; the

1  dispatcher instructed him to apply pressure to the wound.  The apartment manager had been

2  standing at her door, and she gave Thomas a towel.  Thomas couldn't manage to give the

3  dispatcher directions, so the apartment manager called the police, who arrived within five

4  minutes.  Burkett died at the hospital.

5    Thomas said that Devose was about three inches taller than Burkett, but Burkett was

6  more fit and muscular, probably 50 pounds heavier than Devose.  Thomas said that he had

7  recognized the knife as being from Seabrook's kitchen because they frequently ate at Seabrook's

8  apartment.  Thomas said that when he initially told police that he'd never seen the knife before,

9  Burkett was still alive.  Thomas didn't think Burkett was going to die, so he didn't reveal too

10  much to police at that time because he didn't want to get Devose in trouble.

11    Thomas acknowledged on cross-examination that he told police several times that it was

12  an accident, that it wasn't intentional.  He agreed that he doesn't know if it was intentional or

13  accidental.  He never saw the knife when the two were fighting outside.  Thomas never saw the

14  other two get violent towards each other before the incident.  He said they didn't fight physically

15  like that in their family.  He said the three spent a lot of time at Seabrook's but he couldn't

16  remember her name when he talked to detectives that night.  No one ever brought any of

17  Seabrook's utensils to the brothers' apartment; they never ate there because they had no

18  electricity.  When Devose left after he'd first been punched, Thomas didn't see him go to

19  Seabrook's apartment.  The incident happened at night; Thomas couldn't see everything clearly,

20  but he could see that Devose and Burkett were wrestling for a few seconds when they moved

21  outside.  He told police he never saw Devose stab Burkett.  He said the police made him choose

22  yes or no, so then he said yes, Devose stabbed him because that's what Thomas thought from

23  what he was able to  see.

4

Gwen Seabrook testified that she was dating Devose, and he helped her arrange to move into the same apartment complex as he and his brothers. Exh. 39 at 54-103. On the night in question Devose had been at her apartment. She wasn't feeling well, so she asked him to leave. Perhaps an hour later, she answered the door, and Devose was standing there, "his jaw was hanging off the side of his face and he was bleeding." *Id*. at 63. He walked into her bathroom, saying something about fighting with his brother. Seabrook was standing in the bathroom with him. He seemed to be in a lot of pain. He was in the apartment for a few minutes, then left. She could not recall whether Devose said anything.

The prosecution asked Seabrook whether she had told her neighbor that Devose had been ranting and raving and said he was going to kill his brother, and she said no. Police never spoke to her at the time. Nine or ten months later, an investigator came to her apartment and showed her a picture of the knife that Devose had had. She got up and looked in her kitchen drawer, and she had another one of the same knives. Seabrook stated that Devose did not pick up a knife at her house but went straight into the apartment and into the bathroom, looked at his face and then exited the apartment.

The State recalled Earlie Thomas. Exh. 39 at 104-107. The trial court permitted Thomas to testify about a conversation he had had with Seabrook under the "prior inconsistent statement" exception to the hearsay rule. He said he asked her to speak with the district attorneys, and she said that she didn't know if she should because it wasn't going to bring his brother back. She also told Thomas that that night she had heard Devose rummaging around in her kitchen drawers.

Delicha Hardman testified that she lived at the same apartment complex and was getting out of the shower on the night in question when she heard a commotion outside. Exh. 39 at 107-130. She looked out and saw the brothers arguing. She went to tell her mother that something

was wrong.  She then saw Burkett moving away; he seemed to be holding his chest.  Hardman heard a loud bang; she thought it was Seabrook's door slamming shut.  When she went outside, Burkett was on the ground in front of the manager's apartment, and Thomas was pressing a towel on him, trying to stop the bleeding.  Hardman ran to the parking area to direct police to Burkett.

About a week after Burkett died, a vigil for him was held at the apartment complex. Afterwards Hardman was chatting with Seabrook when two friends of Burkett asked to speak with Seabrook.  The three went into Seabrook's apartment for 15-20 minutes; Hardman remained outside with Burkett's family and friends.  Seabrook came out of her apartment, the other two left, and Hardman joined Seabrook in Seabrook's apartment.  Seabrook got on the phone.  She told the person on the phone that she had told the two guys "what they wanted to hear, except I didn't tell them about the weapon." *Id*. at 123.

### III.  Legal Standards & Analysis

#### a. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

To the extent that the petitioner challenges the state court's factual findings, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review.

*See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Lambert*, 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Claims Raised on Direct Appeal

**Ground 3** (was consolidated with ground 6(D), *see* ECF No. 44)

Devose insists that insufficient evidence was presented at trial to support his conviction of second-degree murder with a deadly weapon. ECF No. 8 at 9-10; ECF No. 11 at 6-8. He argues that Burkett had injured him seriously, and the evidence showed that Devose did not have an opportunity to "cool off." He argues his verbal threat to kill Burkett was unaccompanied by any physical aggression, that he grabbed the knife to defend himself when Burkett attacked him a second time, and that after he stabbed Burkett he immediately screamed for someone to call an ambulance. He contends that this shows he lacked intent to kill Burkett.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to § 2254, the petitioner is entitled to relief if based on the evidence presented no

rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

"[T]he standard must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id*. at 324 n.16.  On habeas review, this court must

assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and

must defer to such resolution. *Id*. at 326.  When federal courts "assess a sufficiency of evidence

challenge in the case of a state prisoner seeking federal habeas corpus relief subject to the

strictures of AEDPA, there is a double dose of deference that can rarely be surmounted." *Boyer*

*v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).  First, the *Jackson* standard is itself deferential.

*Id*.  Second, the state court's determination of sufficiency of evidence claims is entitled to

deference. *Id*. at 964-965.  Generally, the credibility of witnesses is beyond the scope of a review

of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

> The Supreme Court of Nevada held that sufficient evidence had been presented:

> Devose claims that his conviction is not supported by sufficient evidence. "When reviewing a criminal conviction for sufficiency of the evidence, this court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution." *Brass v. State*, 128 Nev. 748, 754, 291 P.3d 145, 149-50 (2012); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "'This court will not reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact,'" *Clancy v. State*, 129 Nev. 840, 848, 313 P.3d 226, 231 (2013) (quoting *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008)), and "circumstantial evidence alone may sustain a conviction," *Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980).

> Here, the State presented evidence that the victim fought with Devose at the apartment they shared. Devose left, went to the nearby apartment of an acquaintance, examined his injured jaw, and then rummaged through the acquaintance's kitchen drawers on his way out of the apartment. Devose returned to his apartment several minutes later with a knife visible in his pocket and said he was going to kill the victim. Devose and the victim fought, and the victim died as a result of a stab wound to the neck. While Devose argues that his actions were in self-defense, this claim was presented to, and rejected by, the jury. Based on the evidence in the record, and viewing that evidence in the light most favorable

to the prosecution, we conclude that there is sufficient evidence from which a rational juror could reject Devose's theory of self-defense and find him guilty beyond a reasonable doubt of second-degree murder with the use of a deadly weapon. *See* NRS 200.030(2); NRS 200.200.

Exh. 87 at 2-3.

Second-degree murder is murder with malice aforethought but without the admixture of premeditation and deliberation. Exh. 47 at 18. Malice aforethought is the deliberate intention to kill, which may arise from anger or revenge. *Id*. at 13. Malice aforethought does not imply deliberation or the lapse of any considerable time between the malicious intent to injure another and the actual execution of the intent but denotes an unlawful purpose and design as opposed to accident and mischance. *Id*. The jury was instructed to consider second-degree murder if they could not agree that Devose was guilty of first-degree murder. *Id*. at 19.

Thomas testified that Burkett and Devose physically fought, that Devose left the apartment for several minutes and returned with a knife, that Devose and Burkett then were physically fighting right outside the apartment, and that Burkett stumbled back into the apartment with a stab wound to his neck, saying that he had been stabbed. Seabrook denied that Devose retrieved a knife from her apartment, but she acknowledged that when police later brought the knife that had been used to her apartment that she had another one of the same type in her kitchen. Hardman testified that that Seabrook told Hardman that she did not tell Burkett's friends about the knife. Devose has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. The evidence does not support Devose's contention that he grabbed the knife to defend himself when Burkett attacked him a second time. Instead, Devose left the scene and returned several minutes later with the knife and announced "I'm going to kill you bro." It was therefore not unreasonable for the jury to conclude that the killing

was deliberate and intentional—that it was committed with malice.  Devose has not

demonstrated that the Supreme Court of Nevada's decision on federal ground 3 was contrary to,

or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding. 28 U.S.C. § 2254(d).  I therefore deny federal habeas relief on ground 3.

**Ground 4**

Devose asserts that he was denied his right to conflict-free counsel. ECF No. 8 at 12.

Devose argues that he and trial counsel had a series of disagreements regarding investigation and

trial.  Criminal defendants are not constitutionally entitled to "a meaningful attorney-client

relationship." *Morris v. Slappy*, 461 U.S. 1, 14, (1983). But "if the relationship between lawyer

and client completely collapses, the refusal to substitute new counsel" violates the Sixth

Amendment right to effective assistance. *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir.

1998).  Courts consider three factors to determine whether a conflict constitutes a Sixth

Amendment violation: "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the

timeliness of the motion." *Id*. at 1158-1159.  The Supreme Court of Nevada considers the same

factors.

The Supreme Court of Nevada discussed Devose's claim and rejected it:

> Devose claims he was denied his Sixth Amendment right to the effective
> assistance of counsel when the district court denied his motions for new counsel
> and forced Devose to be represented at trial by an attorney with whom he had
> irreconcilable differences.  "[W]hile a defendant is not entitled to have a
> particular attorney serve as counsel, if the complete collapse of the attorney-client
> relationship is evident, a refusal to substitute counsel violates a defendant's
> Sixth Amendment rights." *Young v. State*, 120 Nev. 963, 968-69, 102 P.2d 572, 576
> (2004).  "We review the denial of a motion for substitution of counsel for abuse of
> discretion." *Id*. at 968, 102 P.2d at 576.  In so reviewing, we consider "(1) the
> extent of the conflict; (2) the adequacy of the [court's] inquiry; and (3) the
> timeliness of the motion." *Id*.

Devose made an oral motion for new counsel the day before trial, claiming counsel had refused to file motions and failed to locate and investigate witnesses. The district court conducted a thorough inquiry, addressing Devose's concerns with his attorney and establishing what remaining investigation counsel would perform, before denying the motion.  Additionally, the district court noted strained communication between Devose and counsel but remarked that the strain was due in part to Devose, as the district court had experienced trouble communicating with and obtaining information from him.

On the first day of trial, Devose filed a motion for new counsel, arguing counsel failed to investigate, prepare for trial, or file requested motions.  A hearing was held at the end of the day, and the district court declined to substitute counsel. The next day, the district court referenced the fact that it had been conducting hearings outside the presence of the jury and the State for two days regarding the request for new counsel; and throughout trial the district court conducted many more hearings to address Devose' s concerns with counsel and the proceedings. On the seventh day of trial, Devose again filed a motion for new counsel, and the district court again conducted a detailed hearing regarding Devose's concerns. The district court stated its belief, which it felt was grounded in the record, that many of the difficulties between Devose and counsel arose from Devose's own unwillingness to cooperate.  "[A] defendant in a criminal case may not, as a matter of law, create a conflict requiring substitution of appointed counsel. ... " *Id.* at 971, 102 P.3d at 578.  Based on the record before this court, we conclude the district court did not abuse its discretion in denying Devose's motions for new counsel.

Exh. 87 at 3-5.

The court had several hearings outside the presence of the jury. *See* Exhs. 30, 33, 35, 40, 42, and 46 (all filed under seal).  At one such proceeding on the seventh day of trial, defense counsel told the court that Devose tried to direct the defense's opening arguments and refused to believe counsel about what was properly presented in an opening argument. Exh. 46.  Devose would not discuss with counsel whether he was going to testify.  The court told Devose:

You are not going to get a continuance of this trial or protract this trial or get a mistrial because you refuse to cooperate with your lawyers. . . . I've made a record up one side and down the other about how you're not cooperating.  You refuse to let him get medical records.  You don't tell him what the defense is until the last minute.  You won't tell him what you're going to testify to or whether you want to testify.

Exh. 46 at 6.

Devose wanted trial counsel to investigate a witness, Chris Bell, who Devose was with the morning of the incident, even though the incident occurred in the late evening when Chris Bell was not present. Exh. 30 at 6.  Devose said he wanted trial counsel to call Chris Bell to assert at trial that he "was innocent" because he acted in self-defense. *Id*. at 9-10.  Devose did not know Chris Bell's address or phone number and did not know exactly what Chris Bell would say. *Id*. at 13.  The trial court concluded that there was no reason to investigate Chris Bell because he had no admissible evidence to offer. *Id*. at 15.  At another hearing a few days later defense counsel recalled that he had discussed Chris Bell with Devose, but when pressed for details Devose stated he did not trust the defense investigator, so no additional effort to find Chris Bell was made. Exh. 35 at 2-5.

Devose complained at another hearing outside the presence of the prosecutor that his attorney had not conveyed the prosecutor's offer, but he also said he didn't want to consider it anyway. Exh. 33 at 3-5.  Devose said during the same hearing that when trial counsel first visited him "there was some things that I felt like – we had a conflict of interest . . . a vibe that we didn't agree." *Id*. at 5.  Devose continued "well, I told him how I felt as in far as him defending me, and the way he looked at me, as if he got offended about it . . . ." *Id*.  The trial court told Devose, "You are not entitled to have your best friend as your attorney . . . he looked at me funny is not grounds to remove your attorney." *Id*.  The trial court once again held that there was no basis to remove counsel. *Id*. at 5.

Devose also refused to allow defense counsel to obtain his medical records based on his reasoning that the prosecutor would use them against him, even though the trial court tried to explain how important evidence of a broken jaw that had to be wired shut would be to his self-

1  defense theory. Exh. 42 at 3-4.  Trial counsel had attempted to convince Devose several times to

2  allow him to obtain Devose's medical records. *Id*. at 5-7.

3       These exchanges discussed in multiple hearings outside the presence of the prosecutor

4  demonstrate that the conflict of which Devose complains was largely, if not entirely, of his own

5  making.  Devose was continually uncooperative and either mislead the defense team or refused

6  to provide information. *See e.g*., Exh. 46 at 8-9.  The trial judge held at least six hearings outside

7  the presence of the prosecutor during which the judge gave Devose multiple chances to make his

8  case for replacing or firing trial counsel. *See* ECF No. 35, Exhs. 30, 33, 35, 40, 42, 46.  Devose

9  never able to present any rationale that replacing counsel was warranted.  Devose was vocal

10  about trial strategy, and the record shows that most of his complaints arose from his own refusal

11  to cooperate.  Devose was not denied his right to conflict-free counsel because there was no

12  conflict other than Devose's unwillingness to work with his appointed counsel and investigator.

13       The court repeatedly concluded during these hearings that Devose provided no concrete

14  grounds for his counsel to be removed. *See*, *e.g*., Exh. 35 at 6.  At one hearing, Devose clarified

15  that he had wanted his counsel to ask Hardman a specific question; counsel acknowledged that

16  he hadn't previously understood what Devose had in mind. Exh. 40 at 7.  The court had the State

17  recall Hardman so that the defense could ask the question.

18       Devose has not shown that the Supreme Court of Nevada's decision on federal ground 4

19  was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme

20  Court law, or was based on an unreasonable determination of the facts in light of the evidence

21  presented in the state court proceeding. 28 U.S.C. § 2254(d).  So I deny federal habeas relief on

22  ground 4.

23  / / / /

### c.  Ineffective Assistance of Counsel Claims

Devose argues that his trial counsel rendered ineffective assistance of counsel (IAC) in several ways.  IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687).  To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.  A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.  Counsel's performance is "measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).   There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

Federal review of a state supreme court's decision on a claim of ineffective assistance of counsel is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The reviewing court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id*. (internal citations omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. Federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-184. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

**Grounds 1 and 5(a)(1)**

Devose contends in ground 1 that trial counsel was ineffective for failing to investigate potential witness Bobby Banks. ECF No. 8 at 3. In ground 5(a)(1) Devose argues that counsel was ineffective for failing to investigate Banks and call him as a witness. The Supreme Court of Nevada rejected these claims, finding neither deficiency nor prejudice:

> Devose next argues that trial counsel should have called Bobby Banks to testify. During a mid-trial hearing in response to Devose's frustrations, counsel explained

that he and his investigator investigated Banks and that he concluded that Banks' testimony would not be helpful. Decisions such as what witnesses to call or objections to raise are tactical decisions that lie with counsel. *Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002). "[C]ounsel's strategic or tactical decisions will be virtually unchallengeable absent extraordinary circumstances." *Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (internal quotation marks omitted). Substantial evidence supports the district court's finding that counsel made a strategic decision not to call Banks, and Devose has not shown extraordinary circumstances warranting a challenge to it. Further, Devose has not alleged sufficient prejudice, as the record belies Devose's suggestion that Banks' testimony would be useful: Banks denied to counsel that he had any phone conversations with Devose during the relevant times, contrary to Devose's representations. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 4.

In one of the hearings outside the presence of the prosecution, defense counsel explained that he had told Devose he was not going to call every single witness that Devose suggested. Exh. 46 at 11-12. Counsel said that based on what Banks told counsel and the investigator, he had nothing to add to what other witnesses would say. Counsel said that later, during trial, Devose told him that he spoke to Banks before the incident. Devose then equivocated as to whether he talked to Banks after the incident. Counsel pointed out that by this time Banks had already been allowed to watch the trial. Counsel nevertheless had the investigator contact Banks, who told the investigator that he had no phone conversations with Devose around the time of the incident. Counsel further explained:

> …he now tells me [about statements that Banks allegedly made] . . . . after I had made a decision not to call Mr. Banks. . . . the second [statement] has to do with supposed conversations that Earlie [Thomas] – Earlie told Mr. Banks. If I had known that before, I might've asked Earlie questions about what he said to Mr. Banks and would've been able to cross examine him on that. But, since that, you know, since I didn't get that information, even if it is legitimate and I don't know if it is, there's nothing I could do with it now based on the information and how he parses it.

*Id.* at 12.

17

Devose's contention that his counsel failed to investigate Banks is belied by the record. Devose did not tell counsel about any conversation between Thomas and Banks until counsel had decided not to call Banks and therefore had not moved to exclude Banks from watching the trial. Counsel still, during trial, looked into what Banks might have to say and explained that based on the investigation he determined that calling Banks would not be helpful.

Devose has not shown that the Supreme Court of Nevada's decision on federal grounds 1 and 5(a)(1) were contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). I thus deny federal habeas relief on grounds 1 and 5(a)(1).

**Ground 5(a)(2)**

Devose argues that counsel was ineffective for failing to retain a self-defense expert. ECF No. 8, ECF No. 8-1 at 113. He asserts that an expert could have presented the jury with factors to consider in determining Devose's state of mind, including that he had been attacked and his jaw was broken, Burkett punched him again as he tried to get up off the ground, and that witnesses said Devose appeared to be in extreme pain and was spitting out blood. The Supreme Court of Nevada rejected this claim:

> Devose next argues that trial counsel should have presented a self-defense expert. Devose has not identified any such expert. Counsel introduced evidence and presented argument regarding each of the facts that Devose suggests this expert would develop. Accordingly, it is not clear what such an expert would add. Devose thus has not shown deficient performance or prejudice in this regard. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 4-5.

Thomas testified that Burkett punched Devose in the jaw, knocking him to the ground, and that as he trying to get back up, Burkett punched him in the chest. Thomas also said that

Devose's jaw was swollen and he was spitting blood.  Seabrook said that when Devose entered her apartment, he said something about fighting with his brother, and "his jaw was hanging off the side of his face and he was bleeding." Exh. 39 at 63.

Devose has not demonstrated that the Supreme Court of Nevada's conclusion that he did not show that counsel was deficient or that he was prejudiced when counsel did not present a self-defense expert was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).  So ground 5(a)(2) is denied.

**Ground 5(a)(3)**

Devose argues that counsel should have retained a toxicology expert. ECF No. 8, ECF No. 8-1 at 113-114. He states that the medical examiner testified that Burkett had methamphetamine in his system but argues that a toxicologist could have explained the potential effects of methamphetamine on Burkett.  The Supreme Court of Nevada rejected this claim:

> Devose next argues that trial counsel should have retained a toxicologist to testify about the effects of methamphetamine. The medical examiner testified that a low level of methamphetamine was found in the victim's blood. Devose has not identified a toxicologist who would testify or explain how the specific level in the victim's blood would have affected the outcome.  Devose thus has failed to allege specific facts showing an entitlement to relief and has shown neither deficient performance nor prejudice.  The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 177 at 5.

The medical examiner testified that a low level of methamphetamine was detected in Burkett's blood.  While he agreed that methamphetamine can cause hallucinations, aggressive behavior, and irrational reactions, he stated that the victim had a very low level that likely would have had only a small physiological effect. Exh. 38 at 136-137, 145-146.

Devose has not shown that the Supreme Court of Nevada's decision on federal ground 5(a)(3) was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).  Devose has not shown that he was prejudiced by the lack of a toxicologist where the victim had only a very low level of methamphetamine in his blood.  I therefore deny relief on ground 5(a)(3).

**Ground 5(b)**

Devose contends that trial counsel ineffectively failed to object to the improper jury instruction on self-defense. ECF No. 8, ECF No. 8-1 at 114-119.  He argues that the jury was instructed that a battery with a deadly weapon may be done in self-defense but not a killing.  The Supreme Court of Nevada rejected this claim:

> Devose next argues that trial counsel should have objected to the jury instructions on self-defense.  He argues that they were improper because they instructed that a battery with a deadly weapon may be done in self-defense but not a killing.  This court determined on direct appeal that the instructions did not amount to plain error. *Devose*, Docket No. 68814.  Devose has not shown that a challenge at trial had merit and thus has not shown deficient performance.  The instructions were not incorrect statements of the law, directed the jurors that "killing" may be justified, and were consistent with the theory of the case.  Further, counsel was able to rely on these instructions in arguing the defense theory of the case in closing.  In stating that a killing may be justified, the instructions belie Devose's allegations.  Moreover, he has not shown prejudice because the instructions given provided that a jury could acquit Devose if the self-defense argument had been found persuasive.  The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 8-9; *see also* Exh. 87 at 8-9.  The following jury instructions are relevant here:

/ / / /

/ / / /

/ / / /

Jury Instruction No. 27:

If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty.

Jury Instruction No. 28:

Use of force against another person in self-defense is justified and not unlawful when the person who uses or attempts to use force actually and reasonably believes:

1. That there is imminent danger that the assailant will either kill him or cause him great bodily injury; and

2. That it is absolutely necessary under the circumstance for him to use in self-defense force or means that might cause substantial bodily harm or death of the other person, for the purpose of avoiding death or great bodily injury to himself or others.

Jury Instruction No. 29:

The defendant is not entitled to the right of self-defense if the State has proven beyond a reasonable doubt that he was the original aggressor, that is a person who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance, or fault, to create a real or apparent necessity for making a felonious assault.

However, where a person without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of his own free will, is attacked by an assailant, he has the right to stand his ground and need not retreat when faced with the threat of deadly force.

Jury Instruction No. 30:

The law does not justify the use of a greater degree of force than is reasonably necessary nor does it justify a person who has been acting in self-defense in the infliction of further injuries upon his assailant after there is no longer any apparent danger.

Exh. 47 at 28-31. The jury was further instructed on battery with a deadly weapon as self-defense. *Id*. at 33-35 (Jury Instruction Nos. 32, 33, 34).

1    In reviewing jury instructions, the court inquires as to whether the instructions as a whole

2    are misleading or inadequate to guide the jury's deliberation. *United States v. Garcia-Rivera*, 353

3    F.3d 788, 792 (9th Cir. 2003) (citation omitted).  An instruction may not be judged in isolation,

4    "but must be considered in the context of the instructions as a whole and the trial record." *Estelle*

5    *v. McGuire*, 502 U.S. 62, 72 (1991).  And jurors are presumed to follow the instructions that they

6    are given. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Even if instructional error is found, the

7    court must apply harmless error. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam),

8    citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  The question is whether the

9    instructional error "had a substantial and injurious effect or influence in determining the jury's

10    verdict." *Id*.

11    The jury was instructed that a killing in self-defense can be justifiable and that if the jury

12    decided that the State had not demonstrated that Devose did not act in self-defense that they were

13    to find him not guilty.  Counsel is not required to lodge futile objections. *See Juan H. v. Allen*,

14    408 F.3d 1262, 1273 (9th Cir. 2005) (explaining that the merits of the underlying claim "control

15    the resolution of the *Strickland* claim because trial counsel cannot have been ineffective for

16    failing to raise a meritless objection").  Devose has not shown that the Supreme Court of

17    Nevada's decision on federal ground 5(b) was contrary to, or involved an unreasonable

18    application of, *Strickland* or was based on an unreasonable determination of the facts in light of

19    the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).  So I deny relief on

20    ground 5(b).

21    **Ground 5(c)**

22    Devose asserts that trial and appellate counsel ineffectively failed to object to evidence

23    demonstrating he was in custody at the time of trial. ECF No. 8, ECF No. 8-1 at 121-126.  He

1 argues that a detective testified that Devose was being housed at Clark County Detention Center

2 and that the state introduced photographs of Devose in jail attire.  A defendant cannot be

3 compelled to appear in front of the jury wearing jail attire or while shackled. *Estelle v. Williams*,

4 425 U.S. 501 (1976); *Deck v. Missouri*, 544 U.S. 622 (2005); *see also Collins v. State*, 405 P.3d

5 657 (Nev. 2017) (Nevada applies the same standard).

6   Las Vegas Metropolitan Detective Fred Merrick testified that he drafted an arrest warrant

7 for Devose, who turned himself in to the Clark County Detention Center. Exh. 41 at 133-135.

8 Merrick then interviewed him there.  A crime scene analyst took photographs of Devose's hands

9 at that time. *Id*. at 166.  The photographs were admitted.  Defense counsel objected to their

10 admission at Devose's request.  When the judge considered the objection, she observed that in

11 the photo she couldn't tell that he had on a jail jumpsuit, but she could see the prison-issue bright

12 orange socks and sandals. *Id*. at 156.

13   The Supreme Court of Nevada rejected this claim:

14    Devose next argues that trial and appellate counsel should have objected to
   evidence of his custodial status through photographs of him in jail attire and a

15    detective's comment that he met Devose at the jail in the course of the
   investigation.  Trial counsel objected that the photographs depicted Devose in jail,

16    and the district court considered the detective's comment contemporaneously.
   Further, appellate counsel raised this issue, though Devose argues that different

17    grounds should have been proffered.  The record belies Devose's contention that
   this evidence disclosed his custodial status; rather, it arguably showed that he had

18    been in custody in the past.  Insofar as Devose presents authority stating that a
   defendant may not be made to attend court in prison garb or in restraints and that

19    the jury may not be told that a defendant is currently in jail, those decisions are
   distinguishable and do not indicate meritorious challenges.  Moreover, insofar as

20    this evidence depicted instances where he was in custody in the course of the
   investigation, it did not give rise to an inference that Devose had a prior criminal

21    history. *See Emmons v. State*, 107 Nev. 53, 59, 807 P.2d 718, 722 (1991) (noting
   that reference to a defendant's criminal history is error and distinguishing that

22    from a comment referring to the investigation for the charged crime), overruled
   on other grounds by *Harte u. State*, 116 Nev. 105 1072, 13 P.3d 420, 482 (2000).

23    Devose has not shown that trial or appellate counsel performed deficiently in their

1  challenges or that he was accordingly prejudiced.  The district court therefore did
2  not err in denying this claim without an evidentiary hearing.

3  Exh. 117 at 5-6.

4      First, trial counsel lodged an objection at Devose's request, which was denied.

5  Moreover, the photos did not necessarily imply he was in custody at the time of trial; the

6  detective testified that he interviewed Devose after Devose turned himself in for arrest when the

7  warrant issued.  So it's logical that at the time of the interview he was in custody.  For that same

8  reason the photos don't infer that he had a criminal history.  Devose cannot show deficiency and

9  prejudice.  He has not demonstrated that the Supreme Court of Nevada's decision on federal

10  ground 5(c) was contrary to, or involved an unreasonable application of, *Strickland* or was based

11  on an unreasonable determination of the facts in light of the evidence presented in the state court

12  proceeding. 28 U.S.C. § 2254(d).  I deny federal habeas relief on ground 5(c).

13  **Ground 5(d)**

14      Devose argues that trial counsel was ineffective when counsel conceded Devose's guilt.

15  The Supreme Court of Nevada rejected this claim:

16      The record shows that counsel did not concede guilt.  In the relevant portion,
   counsel described certain testimony and disputed the State's interpretation that it
17  showed that Devose had the requisite intent for murder.  Counsel did not concede
   Devose's guilt to any extent. Devose has shown neither deficient performance nor
18  prejudice in this regard.  The district court therefore did not err in denying this
   claim without an evidentiary hearing.

19

20  Exh. 117 at 6.

21      During closing arguments, defense counsel addressed (Earlie) Thomas' statement that

22  Devose said to Burkett, "I'm going to kill you, bro." Exh. 45 at 186.[4]  Counsel continued:

23  _____

[4] Closing arguments are found at Exh. 45 at 151-202.

1    But let's suppose he really said that.  Now, that could be some evidence that he
2    intended to kill, but I would submit to you that a lot of times people say things
     like that, I'm going to kill you, and there is no, no intention of killing somebody
3    when that's said.  People say that all the time.

4    And because, I mean if you look at what he did, and once again, we're going to
     assume that what Earlie says is correct, that after he gets hit, he comes back five
5    minutes later, says I'm going to kill you.  But as a point, he doesn't do anything
     else.  He doesn't attack his brother.  He doesn't go after him.  According to Earlie,
6    most of the time he doesn't even pull the knife out.  He just -- he's just there.  But
     somehow or another, he's just doing this to trick – he's doing this to trick Burkett
7    into attacking him and tackling him and throw him to the ground so that he can
     just stab him.  It just doesn't – it doesn't make sense with what happened at least
     what Earlie says.

8

9    *Id.*

10       Counsel was making the common-sense observation that people say they are going to kill

11   someone all the time without meaning it.  But he also tried to cast doubt on whether Devose had

12   made that statement and tried to cast doubt on Thomas' whole version of events.  Again Devose

13   cannot show deficiency and prejudice.  He has not demonstrated that the Supreme Court of

14   Nevada's decision on federal ground 5(d) was contrary to, or involved an unreasonable

15   application of, *Strickland*, or was based on an unreasonable determination of the facts in light of

16   the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).  So ground 5(c) is

17   denied.

18       **Ground 5(e)**

19       Devose contends that trial counsel ineffectively failed to object to numerous instances of

20   prosecutorial misconduct. ECF No. 8-1 at 132-137.  Prosecutorial misconduct may "'so infec[t]

21   the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v.*

22   *Miller*, 483 U.S. 756, 765 (1987), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

23   The court reviews under the "narrow" standard of a due process violation, "not the broad

1  exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A petitioner

2  cannot prevail on such a claim by merely showing "that the prosecutors' remarks were

3  undesirable or even universally condemned." *Id*. To constitute a due process violation, the

4  prosecutorial misconduct must be "'of sufficient significance to result in the denial of the

5  defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765, quoting *United States v. Bagley*, 473

6  U.S. 667, 676 (1985). "Prosecutorial misconduct which rises to the level of a due process

7  violation may provide the grounds for granting a habeas petition only if that misconduct is

8  deemed prejudicial under the 'harmless error' test." *Shaw v. Terhune*, 380 F.3d 473, 478 (9th

9  Cir. 2004). An error is harmless unless it had a "substantial and injurious effect or influence in

10  determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 623 (1993). If there was in

11  fact no prosecutorial misconduct, objection would have been futile, and counsel is not ineffective

12  for failing to make meritless objections. *See Juan H.*, 408 F.3d at 1273.

13       Devose first argues that trial counsel was ineffective for failing to object to witness

14  vouching and failing to object to the prosecutor making statements of personal opinion. Devose

15  argues that the prosecutor improperly vouched for Earlie Thomas's credibility by stating "So yes,

16  Earlie gave inconsistent statements, but it was not for any ill malicious intent, Earlie had just

17  experienced something very, very traumatic." ECF No. 8-1 at 132-133. Devose also asserts that

18  defense counsel failed to object when the prosecutor improperly used the phrase "we know"

19  several times in referring to what the evidence showed. *Id*. at 134-135.

20       The Supreme Court of Nevada rejected the claims together on state post-conviction

21  appeal:

22       Devose next argues that trial counsel should have objected to prosecutorial
     misconduct during closing argument. He argues that the State improperly

23       vouched for a witness's credibility and inserted personal opinion by using the
     phrase "we know" in describing the evidence. This court concluded on direct

appeal that the State permissibly made reasonable inferences from the evidence and summarized the evidence in rejecting claims on these grounds. *Devose v. State*, Docket No. 68814 (Order of Affirmance, February 23, 2018). Thus, Devose has not shown that an objection on either of these grounds had merit and has not shown deficient performance or prejudice in this regard. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 6.

Next, Devose argues that defense counsel was ineffective for failing to object to the prosecutor characterizing "Mr. Devose's statements that he grabbed for whatever he could during the struggle with Mr. Burkett . . ." as a "story." ECF No. 8-1 at 135-136. Rejecting this claim, the Supreme Court of Nevada held:

Devose next argues that trial counsel should have objected to the State's disparaging the defense theory of the case by referring to it as a "story." This court concluded on direct appeal that the State's comment did not amount to plain error. *Devose*, Docket No. 68814. Devose has not shown that a contemporaneous objection on this ground had merit. Here, both the State and defense referred to the different accounts as "stories," and the record is plain that neither usage was disparaging or otherwise improper. Thus, Devose has not shown deficient performance or prejudice in this regard. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 7.

Devose also contends that trial counsel was ineffective for failing to object to the prosecutor arguing facts not in evidence when the prosecutor suggested Devose had the motive to murder due to getting the last laugh or desiring to exact revenge. ECF No. 8-1 at 135-136. The Supreme Court of Nevada disagreed:

Devose next argues that trial counsel should have objected to the State's argument that he killed the victim because he was going to get the last laugh and would not be disrespected. This court concluded on direct appeal that this claim did not amount to plain error, as the prosecutor may argue inferences from the evidence. Devose, Docket No. 68814. Accordingly, Devose has not shown that a contemporaneous challenge had merit and that counsel performed deficiently in omitting it. Even if the State's argument had exceeded what reasonable inferences could be drawn from the evidence, Devose does not argue and has not

shown prejudice. As we determined on direct appeal, this did not affect his substantial rights. The last-laugh argument added mere gloss to the State's permissible argument that Devose was angry after fighting with the victim, left for five minutes, returned with a knife, told the victim that he was going to kill him, and fatally stabbed him after they wrestled briefly. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 7.

The Supreme Court of Nevada had already held on direct appeal that none of these instances constituted prosecutorial misconduct. So any objection by defense counsel would have been futile. And an objection during closing can serve to highlight the statements for the jury. First, the State made reasonable inferences that Thomas made some inconsistent statements because of the stress of a traumatic family event.[5] Next, both sides referenced the other's version of events as a "story." Finally, the last-laugh reference was a permissible inference from testimony that Devose was angry after he was punched and seriously injured, left the apartment, returned telling the victim he was going to kill him, and fatally stabbed him. Devose has not demonstrated that the Supreme Court of Nevada's decision that counsel was not ineffective for failing to object to these statements during closing arguments was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). I therefore deny relief as to the entirety of ground 5(e).

**Ground 5(f)**

Devose argues that trial counsel was ineffective for failing to properly communicate with him prior to and during trial. ECF No. 8, ECF No. 8-1 at 137-138.

---

[5] Thomas also testified that he told the police inconsistent stories because he didn't think Burkett was going to die and thus wanted to protect Devose.

The Supreme Court of Nevada rejected this claim:

> Devose next argues that trial counsel failed to properly communicate with him before trial. The record belies this claim, as it is replete with instances of counsel explaining his extensive efforts to communicate with Devose and plan trial strategy and Devose's unwillingness to assist in these endeavors. Devose has shown neither deficient performance nor prejudice in this regard. The district court therefore did not err in denying this claim without an evidentiary hearing.

Exh. 117 at 7-8.

This claim is utterly belied by the record. As discussed with ground 4, the trial court held several hearings outside the presence of the State, during which defense counsel repeatedly recounted the ways he and his investigator had tried to work with Devose and to get him to coordinate on and contribute meaningfully to the defense theory. Defense counsel attempted at every turn to investigate potential witnesses and to introduce evidence—a prime example of this is Devose's medical records, which could have supported his self-defense theory. The hearings reveal that Devose was often not candid with his team or at least gave them only incomplete information. Devose cannot show that the Supreme Court of Nevada's affirmance of the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). So I deny habeas relief on ground 5(f).

I therefore deny the petition in its entirety.

## IV. Certificate of Appealability

This is a final order adverse to Devose. As such, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). Accordingly, I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*  None of my rulings meets the *Slack* standard so I decline to issue a certificate of appealability for my resolution of Devose's claims.

I THEREFORE ORDER that the petition **[ECF Nos. 8, 11] is DENIED**.

I FURTHER ORDER that a certificate of appealability will not issue.

The Clerk of Court is directed to substitute Ronald Oliver for the respondent William Hutchings, to enter judgment accordingly, and to close this case.

DATED this 24th day of August, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE